USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 2 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ROLANDO SANTI,

                      Plaintiff,

      -against-

THE CITY OF NEW YORK, THE DEPARTMENT
OF CORRECTIONS OF N.Y.C., DR. LANDIS
BARNES, and DR. BRENDA HARRIS,

                      Defendants.
------------------------------------x

MEMORANDUM DECISION
AND ORDER

17 Civ. 4129 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Rolando Santi, *pro se*, brings this action under 42 U.S.C. § 1983, asserting claims against Defendants City of New York (the "City"), the New York City Department of Corrections, and Doctors Landis Barnes and Brenda Harris, arising out of his alleged mistreatment as a pretrial detainee at the Manhattan Detention Center ("MDC").[1] (*See* Am. Compl., ECF No. 8.) Plaintiff alleges that while he was detained at the MDC, Defendants exhibited deliberate indifference to his serious medical needs by failing to transport him to the hospital for a scheduled surgery and then falsifying records to cover it up. (*Id.* at 4–6.) Defendants move to dismiss Plaintiffs' amended complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mot. to Dismiss, ECF No. 23.)

    Before this Court is Magistrate Judge Sarah Netburn's May 8, 2018 Report and Recommendation (the "Report," ECF No. 54), recommending that Defendants' motion to dismiss be granted with respect to Plaintiff's claims against the City and Dr. Harris, but denied as to the claim

---

[1] By Order dated August 22, 2017, this Court, *sua sponte*, dismissed Plaintiff's claims against the New York City Department of Corrections because it is a non-suable entity. (*See* Order of Service, ECF No. 12, at 2.)

asserted against Dr. Barnes.² (*Id.* at 16.) In her Report, Magistrate Judge Netburn advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 17.) No objections have been filed. Having reviewed the Report for clear error and finding none, this Court ADOPTS the Report in full.

## I. LEGAL STANDARDS

### A. Report and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a 12(b)(6) motion, the court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See N.J. Carpenters Health*

---

² The relevant procedural and factual background is set forth in greater detail in the Report, and is incorporated herein.

*Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The court, however, need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678, nor must it give effect to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

*Pro se* litigants are generally "entitled to some latitude in meeting these requirements, as [their complaints] are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)). Nonetheless, to withstand a motion to dismiss, "a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). "Even from pro se plaintiffs, bald assertions and conclusions of law are not adequate." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

### C. Deliberate Indifference Claims under Section 1983

A pretrial detainee may bring a claim under Section 1983 challenging allegedly unconstitutional conditions of confinement "by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In order to prevail on such a claim, the plaintiff must demonstrate that: (1) the challenged conditions were "sufficiently serious to constitute objective deprivations of the right to due process," and (2) the defendant "acted with at least deliberate indifference to the challenged conditions." *Id.*

For a claim of inadequate medical care, as here, a plaintiff may satisfy the first element by alleging he was "actually deprived of adequate medical care," and that "the inadequacy in medical care [was] sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To assess whether

3

the deprivation of adequate medical care is "sufficiently serious," courts consider a number of factors, including whether "a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Id.* at 280 (internal quotation marks and citation omitted). To establish deliberate indifference, the plaintiff must adequately allege "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

### D. Municipal Liability under Section 1983

It is well settled that a municipality may be held liable under Section 1983 "for the violation of a person's civil rights only if the moving force behind that violation was an official policy or custom of the municipality." *Williams v. Town of Southington*, 205 F.3d 1327 (2d Cir. 2000) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–94 (1978). Thus, to prevail on a Section 1983 claim against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To be actionable, the policy must be both "deliberate" and a "moving force" behind the deprivation of the plaintiff's constitutional rights. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

### II. PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS

The Report correctly found that Plaintiff has alleged an actual deprivation of adequate medical care. (Report at 6–7.) As the Report notes, Plaintiff alleges that on September 22, 2016, while he was detained at the MDC, he was diagnosed with bilateral inguinal hernias, requiring surgery "as soon as possible." (*Id.* at 3.) Plaintiff further alleges that, unbeknownst to him, he was scheduled for surgery

4

at Bellevue Hospital on February 6, 2017, but was never taken to the hospital on that date for the surgery.[3] (*Id.*) Moreover, he alleges that Dr. Barnes falsified Plaintiff's medical records to misrepresent that Plaintiff refused to be taken to Bellevue Hospital for the surgery. (*Id.*) Accordingly, the Report appropriately found that Plaintiff sufficiently alleged that he was actually deprived of adequate medical care in February 2017. (*Id.* at 7.)

The Report also correctly concluded that the inadequacy in medical care was "sufficiently serious." (*Id.* at 9.) Plaintiff alleges that the medical staff at the MDC observed that he needed surgery "as soon as possible," demonstrating that the medical condition was "important and worthy of comment." (*Id.* at 3); *Salahuddin*, 467 F.3d at 280 (internal quotation marks and citation omitted). Plaintiff also alleges that Dr. Barnes's cover up of the missed appointment and the ensuing delay in Plaintiff's treatment left him with "terrible pain," affected his ability to sleep and use the bathroom, and allowed his hernia condition to worsen. (*See* Report at 4; Am. Compl. at 5–8.) In addition, Plaintiff alleges that before the April 2017 surgery, his doctor informed him that because the hernia on his right side had become "so deep[,]" there was only a fifty percent chance he would be able to have children in the future. (Report at 4.) The Report therefore correctly found that the inadequacy of Plaintiff's medical care was "sufficiently serious." (*Id.* at 9.)

The sole remaining issue is whether Defendants acted with deliberate indifference towards the inadequacy of Plaintiff's medical care. As noted, this inquiry turns on whether Defendants knew, or should have known, that their alleged conduct posed an excessive risk to Plaintiff's health. *See Darnell*, 849 F.3d at 35. The Report correctly concluded that Plaintiff's allegations adequately state a claim for deliberate indifference against Dr. Barnes. (Report at 11.) At the time Dr. Barnes allegedly falsely recorded that Plaintiff had declined the February 6, 2017 surgery, he knew or should have known that

---

[3] Plaintiff's surgery was rescheduled for April 20, 2017. (Report at 4.)

his misstatements would risk a delay in Plaintiff's treatment, cause Plaintiff to remain in significant pain, and pose a serious risk to his long-term health. (*Id.*) Accordingly, Defendants' motion to dismiss Plaintiff's deliberate indifference claim against Dr. Barnes is DENIED.

The Report also correctly concluded that Plaintiff's allegations do not state a claim for deliberate indifference against Dr. Harris. Plaintiff was not seen by Dr. Harris until February 8, 2017, when Plaintiff arrived at the medical clinic at the MDC with pain and swelling in his groin and abdominal area. (*Id.* at 11.) Plaintiff alleges that at that time, Dr. Harris asked him to sign a document indicating that he had refused surgery two days earlier, on February 6, 2017. (*Id.*) After Plaintiff declined to sign the document, Dr. Harris sent Plaintiff on an emergency visit to Bellevue Hospital, where he was provided with shots for the swelling and medication for the pain. (*Id.* at 3, 11.)

These allegations do not support a claim that Dr. Harris disregarded a substantial risk to Plaintiff of which she was, or should have been, aware. (*Id.* at 11.) For example, Plaintiff does not allege that Dr. Harris made any false statements, or that she knew that Dr. Barnes's statements were false when she asked Plaintiff to sign the acknowledgement that he had refused treatment on February 6. Nor does Plaintiff allege that Dr. Harris was personally involved in failing to provide treatment after she sent Plaintiff to Bellevue Hospital on February 8. Defendant's motion to dismiss Plaintiff's deliberate indifference claim against Dr. Harris is therefore GRANTED.

### III. PLAINTIFF'S SECTION 1983 CLAIM AGAINST THE CITY

The Report properly concluded that Plaintiff fails to plead sufficient facts to state a claim against the City under Section 1983. Plaintiff alleges no facts to support his conclusory assertion that the MDC intentionally failed to transport him to Bellevue Hospital for his initial surgery appointment. (*Id.* at 14.) Nor does Plaintiff plead any facts suggesting that the MDC's failure to transport Plaintiff to the hospital was attributable to an official policy or practice, or caused by a failure to provide adequate training or supervision, as required to state a claim against a municipality under Section 1983.

6

*See Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 538–39 (S.D.N.Y. 2015). Plaintiff also does not plead any facts suggesting that Dr. Barnes's single, isolated instance of wrongdoing sufficiently demonstrates a policy or practice attributable to the City. (*See* Report at 15.) For example, Plaintiff does not allege that Dr. Barnes's conduct was part of an official municipal policy, or that Dr. Barnes was acting as a final policymaker when he allegedly made the false statement in Plaintiff's medical records. (*See id.*) Finally, Plaintiff fails to allege that any delay in his treatment resulted from a formal policy, the action of a final policymaker, or a failure to properly train or supervise. (*See id.* at 16.) Moreover, Plaintiff has not alleged that the City is responsible for Bellevue Hospital's scheduling practices or surgery availability. (*Id.*)

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claim against the City is GRANTED.

## IV. CONCLUSION

Magistrate Judge Netburn's Report is ADOPTED. Defendants' motion to dismiss, (ECF No. 23), is GRANTED with respect to the City and Defendant Harris, and DENIED as to Defendant Barnes.

Dated: New York, New York
June 22, 2018

SO ORDERED.

George B. Daniels
GEORGE B. DANIELS
United States District Judge